UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LOUIS NULL, | |
| Plaintiff, | |
| v. | Case No. 1:24-CV-431 JD |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Louis Null applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he became disabled in September 2021.[1] His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. Null was not disabled. The Appeals Council later denied his request for review, and Mr. Null now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

---

[1] Mr. Null had previously applied for benefits, but the agency denied the application for the period ending on February 1, 2021. On appeal in this district, the agency's decision was affirmed. At the hearing before the Administrative Law Judge in this case, Mr. Null's attorney conceded that the earliest possible date for a finding of disability was February 2, 2021, and accordingly amended the alleged onset date.

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### B. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant

must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the

3

burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C.  The ALJ's Decision**

In finding that Mr. Null was not disabled, the ALJ employed the customary five-step analysis. At step two, he found that Mr. Null suffered from the following severe impairments: "major depressive disorder; bipolar disorder; anxiety disorder; attention-deficit hyperactivity disorder (ADHD); and post-traumatic stress disorder." (ALJ's Decision, R. at 25.) At step three, the ALJ concluded that Mr. Null "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*)

In his decision, the ALJ recounted Mr. Null's testimony at the hearing:

Mr. Null said he could not work because he can no longer maintain his mental stability around others. According to Mr. Null, he checked himself into the hospital in July 2022 in order to save his life. (*Id*. at 28.) Mr. Null testified about having "good" days where he could perform some tasks and "bad" days where he could do nothing. He reported verbal altercations with coworkers. (*Id*. at 28–29.) Mr. Null described hearing a 'second person' in his head, and having extreme difficulty concentrating, which affected his ability to follow the hearing. (*Id.* at 29.) He reported anxiety and anger triggers, such as bad news and questioning his intelligence. He stated that medication helps without side effects, though past medications worsened symptoms. Mr. Null explained his typical day as negotiating with himself to get motivated, running errands, or helping with housework, but he struggled with focus and road rage. He said he experiences racing thoughts and his symptoms are unpredictable. (*Id.*)

4

The ALJ found that Mr. Null's medical condition could reasonably account for the symptoms he described. Even so, he concluded that Mr. Null's statements regarding the severity, persistence, and limiting effects of those symptoms were not fully consistent with the medical and other evidence in the record. For example, the ALJ noted that medical notes from October 2019 and February 2020 show that Mr. Null acknowledged that medications like Xanax improved his mood but chose to stop taking them, even when advised that medication was necessary, much like wearing glasses by people who have vision issues. When the ALJ asked Mr. Null about this, he said he couldn't recall these discussions. The ALJ was also skeptical of Mr. Null's representations given that, in June 2020, Mr. Null was worried about treatment notes being shared with the Social Security Administration, as some suggested he could work in a different job. In response to the ALJ's questioning about that, he again said he didn't remember these conversations. (*Id*. at 29–30.) Finally, the ALJ recounted that Mr. Null alleged his treatment was limited due to lack of insurance. When asked why he was not receiving therapy, he said he had already answered and was becoming "triggered," but ultimately stated that no one informed him his insurance would cover therapy. He acknowledged, however, that he had HIP insurance for two years and was insured while receiving disability benefits from his prior employer. (*Id.* at 30.)

The ALJ also considered the medical opinions and prior administrative medical findings. Mr. Null underwent a consultative mental examination by Dr. Dan Boen on October 18, 2021. Dr. Boen opined that Mr. Null would have difficulties with concentration, staying on task, and getting along with coworkers and a boss. The ALJ found this opinion to be unpersuasive because it was inconsistent with Dr. Boen's own summary of findings and treatment notes, and was somewhat "vague." (*Id.* at 34–35.)

5

The ALJ found that state agency psychologists' opinions that Mr. Null had moderate limitations in concentration, persistence, and pace were "not the most persuasive." (*Id*. at 35.) According to the ALJ, this opinion was "less than consistent with the record including Dr. Boen's notes which reflected mildly below normal concentration and the mental health treatment notes which reflect normal or good concentration and even denials of issues with concentration. (*Id.*) That said, in his decision the ALJ nevertheless found that "[w]ith regard to concentrating, persisting, and maintaining pace, [Mr. Null] has moderate limitations." (*Id*. at 26.)

As for the other "paragraph B" criteria, the ALJ found that in interacting with others, and adapting or managing himself, Mr. Null has moderate limitation (*id*.), yet in understanding, remembering, or applying information, he has "nor more than a mild limitation" (*id*. at 25).

The ALJ concluded that Mr. Null had the residual functional capacity ("RFC") [2] to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited from complex tasks. The claimant can perform detailed as well as simple and routine tasks and instructions throughout the workday. The claimant can learn tasks within a short period of time such as through short demonstration, or when beyond short demonstration, within up to 30 days. The claimant can engage in brief and frequent interactions with coworkers and supervisors. The claimant can receive instructions and demonstrations or training from the supervisor as needed. However, work should not involve frequent, intense, and prolonged conversations with others in order to achieve task completion. Work should involve little or no contact with the general public. Work should not involve tandem shoulder to shoulder positioning. Workplace changes should be gradual and expected. The claimant can make simple work-related decisions within this environment. The claimant can respond or adapt to the changes, cope with the stress and engage in the decision making required of such tasks. With such limitations in place, the claimant can maintain the concentration, persistence, adaptation and even the pace required of such tasks for two-hour increments, and for eight-hour

---

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

6

>workdays—within the confines of normal work place breaks and lunches—on a sustained day to day basis.

(*Id*. at 27.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on his RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Mr. Null's RFC could perform: cleaner, hand packager, and industrial cleaner. (*Id*. at 37.) The ALJ then posed a second hypothetical to the VE, asking about employer's off-task allowances if the individual has additional limitations due to difficulty maintaining focus or pace (e.g., frustration, anger, racing thoughts, etc.). (R. at 65.) The VE answered that "[e]mployers will allow for up to 10 percent of the day time off task in addition to the scheduled breaks and lunch" and "one to two absences a month, but not on an ongoing basis for around six absences a year. And someone leaving early for several hours would count as an absence." (R. at 65–66.) The ALJ assessed the RFC consistent with the first hypothetical, ultimately concluding that Mr. Null was not disabled. (R. at 37–38.)

**C. Discussion**

In his appeal, Mr. Null argues that the ALJ committed three principal errors warranting remand. First, he contends that the ALJ failed to explain why he departed from Dr. Boen's opinion that Mr. Null would have difficulty getting along with his coworkers and a boss. Mr. Null asserts that the ALJ's finding that Dr. Boen's opinion conflicts with his own examination lacks a logical basis.

Second, Mr. Null maintains that the ALJ failed to adequately account in the RFC for the ALJ's own findings that he had moderate limitations in concentration, persistence, and pace (commonly referred to as "CPP" in Social Security parlance).

Finally, Mr. Null argues that the ALJ failed to reconcile the conflict between Mr. Null's limitation to "simple and routine tasks" and the Reasoning Level 2 occupations that the ALJ found Mr. Null could perform. Mr. Null contends that only Reasoning Level 1 work, which involves simple one- or two-step instructions, would be consistent with the ALJ's findings.

The Court will address Mr. Null's second argument only as it merits remand.

**(1)** *Concentration, Persistence, and Pace*

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024), "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). 20 C.F.R. § 404.1545(a)(2). ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your residual functional capacity.") "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id*. Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id*.

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09

8

> C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

As relevant to Mr. Null's appeal, at step three of the sequential analysis, the ALJ found that Mr. Null had moderate limitations in CPP.[3] (ALJ's Decision, R. at 26.) Despite this finding, the ALJ's hypothetical question to the VE and the resulting RFC are silent about that finding or the extent of this limitation, and the record does not suggest that the VE independently reviewed the medical record so as to be clearly aware of Mr. Null's limitations. Instead, in both the RFC and the hypothetical, the ALJ stated that Mr. Null can "perform a full range of work at all exertional levels" with the following restrictions:

- He "is limited from complex tasks": "Mr. Null can perform detailed as well as simple and routine tasks and instructions . . . [He] can learn tasks within a short period of time such as . . . within up to 30 days";

- He "can engage in brief and frequent interactions with coworkers and supervisors . . . . Work should involve little or no contact with the general public . . . [or] tandem shoulder to shoulder positioning";

- "Workplace changes should be gradual and expected. . . . [Mr. Null] can respond or adapt to the changes, cope with the stress and engage in the decision making required of such tasks."

(ALJ's Decision, R. at 27; Hrg. Tr., R. at 64–65.) According to the RFC and the hypothetical, "[w]ith such limitations in place, [Mr. Null] can maintain the concentration, persistence, adaptation and even the pace required of such tasks for two-hour increments, and for eight-hour

---

[3] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

10

workdays—within the confines of normal work place breaks and lunches—on a sustained day to day basis." (ALJ's Decision, R. at 27; Hrg. Tr., R. at 65.) Yet Mr. Null's restrictions to simple and routine tasks does not automatically accommodate his limitation in CPP. *See, e.g.*, *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) (noting the concern that the restriction for "simple, repetitive tasks" is a one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms.) What is more, the ALJ has supplied no reason to believe that restrictions to brief and frequent interactions with coworkers, and gradual workplace changes adequately address the CPP limitations.

This case is similar to *Crump v. Saul*, 932 F.3d 567, 568 (7th Cir. 2019). In *Crump*, the record was mixed as to the extent of the plaintiff's ability to pay attention and concentrate. On the one hand, the plaintiff was consistently observed during office visits as being able to pay attention and concentrate. On the other hand, the plaintiff suffered from hyperactivity, irritability, grandiosity, and similar symptoms "as a result of her bipolar disorder." *Id.* at 568.

> Following the hearing, the ALJ concluded that, although her impairments were severe, Crump was not disabled. In making this determination, the ALJ found that Crump had "moderate difficulties maintaining concentration, persistence, or pace." But these difficulties were offset, the ALJ reasoned, by Dr. Scully's opinion that Crump was attentive, persistent, and focused. Furthermore, the ALJ attributed little weight to Dr. Babu's opinions, finding them inconsistent with his many treatment notes indicating that Crump exhibited no mood swings and maintained her attention during office visits. These findings led the ALJ to conclude that Crump had the residual functional capacity, or RFC, to perform light work limited to "simple, routine, repetitive tasks with few workplace changes" because of "issues concentrating due to racing thoughts from bipolar disorder." Accordingly, the ALJ denied Crump's application for disability benefits.

*Id*. at 569.

On appeal, the Seventh Circuit reiterated that "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id.* at 570.

11

The court also explained that "[w]hen the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of available jobs." *Id*. Applying these principles, although the ALJ seemed to recognize the plaintiff's CPP challenges, he did not adequately address them in the RFC. While the ALJ added off-task limitations in the second hypothetical for the VE, he failed to incorporate those limitations into the RFC. Instead, the ALJ limited the plaintiff to performing simple, repetitive tasks, without addressing the CPP limitations, which the court found to be a reversible error. *Id*.

As in *Crump*, the ALJ here appears to have considered the off-task limitations (*see* R. at 66), but opted to limit Mr. Null to simple and routine tasks, brief and frequent interactions with coworkers, and gradual workplace changes without explaining how these restrictions account for Mr. Null's deficits in CPP. Moreover, the inclusion of limitations regarding interactions and workplace changes does not salvage the ALJ's decision. Missing from the ALJ's decision are citations to evidence that such restrictions do in fact account for the CPP limitations.

For example, in *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020), the ALJ accommodated the plaintiff's moderate CPP limitations by limiting "him to 'simple routine tasks,' using 'judgment limited to simple work related decisions,' and having 'brief and superficial interaction' with coworkers." The court found no error because "[t]he ALJ explained that she limited [the plaintiff] to simple tasks specifically because of '*evidence of decreased concentration, when handling more complex tasks*, as evidenced by past poor performance on long tests and testimony that he was unable to keep a job due to being unable to pass an entrance test." *Id*. 242 (emphasis added).

Here, however, the ALJ has identified no evidence (nor has the Commissioner) that modifying other areas of mental functioning, or limiting Mr. Null to simple tasks rather than

12

complex tasks, would lead to improved CPP for Mr. Null. *See Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 775 (E.D. Wis. 2019) ("The ALJ may have thought that limiting a claimant to 'simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public and supervisors' was sufficient to account for the moderate difficulties in CPP the ALJ found, but the Seventh Circuit has made clear that it is not."); *see also Randi R. W. v. Comm'r of Soc. Sec.*, 421 F. Supp. 3d 616, 628 (N.D. Ind. 2019) ("[T]he ALJ's failure in the RFC analysis to connect evidence of [the plaintiff's] limitations in CPP that allegedly account for the full range of her limitations is problematic given authority that 'simple tasks' restrictions do not, on their own and without further explanation, account for moderate limitations in CPP.") (citing cases).

In countering Mr. Null's contention that the RFC fails to account for his CPP limitations, the Commissioner devotes about ten lines in his brief. The Commissioner states that "[t]he ALJ included multiple workplace restrictions to account for [Mr. Null's] difficulties with concentration—he was restricted to detailed, simple, routine tasks; gradual workplace changes; and significantly reduced social interactions to address the complaints of anxiety and paranoia around others." (Def.'s Resp. Br., DE 20 at 6.) The problem with the Commissioner's argument is that he does not explain how these restrictions accommodate a moderate limitation in CPP. For example, the ALJ reduced social interactions to account for Mr. Null's anxiety and paranoia around others. But the ALJ never explained how that was sufficient to accommodate the finding of moderate limitations in CPP. The same is true of the restriction to gradual workplace changes. And as the Seventh Circuit has made clear, restrictions to simple, routine tasks do not by themselves account for a limitation in CPP. The Commissioner asks the Court to accept his

13

conclusion without analysis, but the answer he proposes is not so obvious that the Court can dispense with both further explanation and supporting evidence.

The Commissioner also argues that "[t]he ALJ explained that the largely normal mental status exams during the relevant time period and [Mr. Null's] ability to manage his ADHD on medications supported a finding that he could concentrate on and persist at detailed and simple tasks for two-hour periods." (*Id.*) But that's part of the problem: on the one hand the ALJ found that Mr. Null has a moderate limitation in CPP; on the other hand he concluded that he can work like everyone else—in two-hour increments between breaks—without reflecting any level of functional limitation. *See Moy*, 142 F.4th at 552 (holding that an RFC finding failed to account for moderate CPP limitations where the ALJ stated the claimant could "work at a consistent production pace," a provision that did not reflect any functional limitation, and therefore reversal and remand were required). Again, the Court is not suggesting that Mr. Null is incapable of working at this functional level; rather, the ALJ should have explained why the restrictions he imposed are sufficient to accommodate his moderate limitations in CPP. In other words, the logical bridge from the evidence to the conclusion is missing.

Similarly, the ALJ did not explain what evidence led him to conclude that Mr. Null had the ability to concentrate, persist, adapt, and keep the required work pace "for two-hour increments, and for eight-hour workdays—within the confines of normal work place breaks and lunch—on a sustained day to day basis." (ALJ's Decision, R. at 27.) Without such an explanation, and more importantly without evidence supporting such a conclusion, the ALJ impermissibly stepped into the realm of impersonating a medical expert. *See Lashonda M. v. Saul*, No. 1:20-CV-765, 2021 WL 2659596, at *8 (S.D. Ind. June 28, 2021) ("[N]owhere in the ALJ's decision does he make it clear how he arrived at the two-hour interval figure. No state

agency doctor or any other doctor offered this opinion. Absent support in the record for the two-hour interval, the ALJ impermissibly formulated his own independent medical opinion regarding the effects (or lack of effects) of the claimant's moderate difficulties of concentration, persistence, or pace.") (quotation marks and citation omitted).

Likewise, the ALJ's inclusion in the RFC of the limitations concerning the time period needed to learn the job—such as "within a short period of time such as through short demonstration, or when beyond short demonstration, within up to 30 days" (ALJ's Decision, R. at 27)—is just another way of saying that Mr. Null can do simple and routine tasks, which adds nothing to the discussion. *See Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) ("The hypothetical question begins by positing a person capable of performing 'simple, routine, and repetitive tasks.' These terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520. As Varga notes, whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining concentration, persistence, or pace—can perform such work.")

Finally, the Commissioner submits that Mr. Null did not point "to any objective evidence in the record supportive of greater restrictions than those assessed," as is his burden at steps one through four of the sequential analysis. This argument is misplaced, however. Mr. Null is not arguing that he has a greater than moderate limitation in CPP; his argument is that his moderate limitation adopted by the ALJ has not been accommodated by the limitations imposed in the RFC. Mr. Null has met his burden in this respect.

The ALJ's failure to include in the RFC Mr. Null's moderate limitation in CPP is significant. The VE testified that being off task more than 10% of a workday or missing work

more than once or twice a month (or more than six times in a year) would be job-prohibitive. (R. at 66.) As a result, it's important to understand to what extent, if at all, the ALJ believed Mr. Null's limitations in CPP would interfere with his ability to perform work. The VE should have been told about Mr. Null's moderate limitations in CPP, or the ALJ should have explained why the limitations are inconsequential, so as to ensure that the jobs the VE proposed are ones that Mr. Null can actually do. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting Moreno v. Berryhill, 882 F.3d 722, 730 (7th Cir. 2018)). In other words, the VE's testimony regarding available jobs cannot be relied on as substantial evidence.

      The Seventh Circuit makes few exceptions to the requirement that all the claimant's limitations be included in the RFC so that the VE can consider the available jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court allowed an RFC where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620 (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir.

2009)). Finally, in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the court upheld an ALJ's decision where the ALJ "justified the conclusion that the claimant could work at a consistent pace by expressly incorporating the doctor's recommendation that the claimant engage in only simple, repetitive tasks (which, according to the doctor, accounted for the claimant's pace-related limitations)." *Moy*, 142 F.4th at 555. But none of these scenarios apply here, given that nothing in the RFC can be read as a substitute for moderate limitations in CPP.

To be clear, in remanding this case, the Court takes no position on whether evidence supports the mental limitations included in the RFC as accounting for CPP, or whether Mr. Null is able to stay on task in two-hour increments during the workday. That's for the ALJ to decide and to explain in a way that allows the reviewing court to retrace the path of the ALJ's reasoning.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: November 20, 2025

                                                /s/ JON E. DEGUILIO  
                                                Judge  
                                                United States District Court